UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DANIEL RIVERA,

      Petitioner,

v.                     Case No: 2:13-cv-590-FtM-29CM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,[1]

      Respondents.

_____

**OPINION AND ORDER**

Petitioner Daniel Rivera (Petitioner), filed a *pro se* Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on July 26, 2013.[2] Petitioner challenges his state court judgment of conviction for armed robbery in the Twentieth Judicial Circuit Court, Collier County, Florida (case number 06-2456CF).

In accordance with the Court's Order to Show Cause (Doc. #9) on September 24, 2013, Respondent filed a Response to the Petition

---

[1]When a petitioner is incarcerated and challenges his present physical confinement, "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004) (citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2]The Petition was docketed and filed in this Court on August 15, 2013; however, the Court "applies the mailbox rule and refer[s] to the date [petitioner] signed his motions or petitions and submitted them to prison authorities." Cramer v. Sec'y Dep't of Corr., 461 F.3d 1380, 1381 n.1 (11th Cir. 2006).

(Doc. #17) and supporting exhibits (Exs. 1-16).  The Petitioner filed a Reply (Doc. #15) on February 26, 2014.[3]  This matter is ripe for review.

## I.

On September 21, 2006, Petitioner was charged by Information with robbery with a weapon.  (Ex. 1, pp. 22-23.)  Petitioner was tried by jury and found guilty (case no. 06-2456CF).  (Id. at p. 54.)  Petitioner was sentenced to life in prison as a prison release reoffender and habitual felony offender. (Id. at pp. 81-83.)

A notice of appeal was filed on May 5, 2008.  (Id. at p. 105.)  On June 19, 2009, the state district court affirmed *per curiam* without a written opinion (case no. 2D08-2267).  (Ex. 4.) The mandate was issued on July 16, 2009.  (Ex. 5.)

On July 16, 2010, Petitioner filed a motion for post-conviction relief raising five claims of ineffective assistance of trial counsel.  (Ex. 6.)  Specifically, Petitioner raised the following claims: (1) trial counsel was ineffective for failing to object to the trial judge asking clarifying questions during the hearing on the motion to suppress; (2)trial counsel was ineffective

---

[3] The Court notes that Petitioner filed his Reply before the Response was entered on the docket.  However, the Reply incorporates substantive arguments contained in the Response indicating the Petitioner had reviewed the Response before filing his Reply.

for failing to object to certain prejudicial statements made by a co-defendant which were admitted during trial; (3) trial counsel was ineffective for failing to enhance the surveillance video tape; (4) trial counsel was ineffective for failing to present pay stub evidence to explain cash found in Defendant's possession at the time of his arrest. (Ex. 6.)

On August 26, 2011, the court held an evidentiary hearing on grounds three through five. (Ex. 10; Ex. 11.) All grounds were denied. (Id.) Petitioner appealed and the appellate court *per curiam* affirmed without written opinion on April 26, 2013 (case no. 2D11-5439). (Ex. 14.) The mandate was issued on June 18, 2013. (Ex. 15.)

Petitioner filed the instant Petition for Writ of Habeas Corpus (Doc. #1) pursuant to 28 U.S.C. § 2254 on July 26, 2013. Petitioner raises the following grounds in his Petition: (1) whether the state court erred in denying Petitioner's motion to suppress and motion for new trial based on the victim's in-court identification of Petitioner; (2) whether Petitioner's trial counsel was ineffective for failing to object to the trial judge asking clarifying questions during the hearing on the motion to suppress; (3) whether trial counsel was ineffective for failing to object to the introduction of testimony that violated Bruton v United States, 391 U.S. 123 (1968).

Respondent acknowledges the Petition is timely, and the Court agrees.

## II.

Petitioner filed his Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Neither party disputes the applicability of the AEDPA or the timeliness of the Petition.

**A.   Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")**

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision.  White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)).  A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply", Bottoson, 234 F.3d at 531 (quoting

- 5 -

Williams, 529 U.S. at 406).  The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155.  Petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86, 131 S. Ct. 770, 786-787 (2011)).

Finally, the Supreme Court has stated that "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding[.]"  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (dictum).  When reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see, e.g., Burt v. Titlow, 134 S. Ct. 10, 15-16 (2013); Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that

the factual premise was incorrect by clear and convincing evidence").

**B.   Federal Claims Must Be Fully Exhausted**

Ordinarily, a state prisoner seeking federal habeas relief must first "'exhaus[t] the remedies available in the courts of the State,' 28 U.S.C. § 2254(b)(1)(A), thereby affording those courts 'the first opportunity to address the correct alleged violations of [the] prisoner's federal rights.'" Walker v. Martin, ____ U.S. ____, 131 S. Ct. 1120, 1127 (2011) (quoting Coleman v. Thompson, 501 U.S. 722, 731 (1991)).   This imposes a "total exhaustion" requirement in which all of the federal issues must have first been presented to the state courts.   Rhines v. Weber, 544 U.S. 269, 274 (2005).   "Exhaustion requires that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.   That is, to properly exhaust a claim, the petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." Mason v. Allen, 605 F.3d 1114, 1119 (11th Cir. 2010) (citing O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) and Castile v. Peoples, 489 U.S. 346, 351 (1989)).

To fairly present a claim, a petitioner must present the *same* federal claim to the state court that he urges the federal court

to consider.  A mere citation to the federal constitution in a state court proceeding is insufficient for purposes of exhaustion. Anderson v. Harless, 459 U.S. 4, 7 (1983).  A state law claim that "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement."  Duncan v. Henry, 513 U.S. 364, 366 (1995) (per curiam).  "'[T]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"  McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005) (quoting Kelley v. Sec'y for the Dep't of Corr., 377 F.3d 1317, 1343-44 (11th Cir. 2004)).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine."  Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001), cert. denied, 534 U.S. 1136 (2002).  Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief . . . . ."  Smith, 256 F.3d at 1138.  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.  House v. Bell, 547

U.S. 518, 536-37 (2006); <u>Mize v. Hall</u>, 532 F.3d 1184, 1190 (11th Cir. 2008).

**C.    Standard for Ineffective Assistance of Counsel**

In <u>Strickland v. Washington</u>, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687-88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  <u>Id.</u>  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. <u>Burt</u>, 134 S. Ct. at 13 (citing <u>Cullen v. Pinholster</u>, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under <u>Strickland</u>'s performance prong is "reasonableness under prevailing professional norms." <u>Strickland</u>, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]"  <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's conduct on the facts of the

particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690).

As to the prejudice prong of the <u>Strickland</u> standard, Petitioner's burden to demonstrate prejudice is high. <u>Wellington v. Moore</u>, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

### III.

For the reasons stated below, the Court finds after *de novo* review that the state court's rulings are not contrary to, nor an unreasonable application of, clearly established federal law. This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d

1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S. Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  The Court addresses each of Petitioner's arguments in turn.

**A.   Ground One: Whether the state court erred in denying Petitioner's motion to suppress the victim's in-court identification of Petitioner and in denying his motion for new trial on the same grounds.**

In ground one, Petitioner alleges the state court erred by denying his motion to suppress and motion for new trial due to the in-court identification of the Petitioner by the State's eyewitness.  (Doc. #2, p. 5.)  This claim was raised in Petitioner's direct appeal which was *per curiam* affirmed.  (Ex. 2; Ex. 4.)

According to Petitioner, the witness was unable to identify the Petitioner in a photographic line-up which led the state to direct its witness to enter the courtroom and observe the Petitioner who was appearing with his counsel for a pre-trial conference on the Friday before the jury trial.  (Id.)  Petitioner asserts this was an improper show-up which tainted the in-court identification of Petitioner.  (Id.)

Respondent argues that Petitioner is merely speculating that the witness' observation of him at the pretrial hearing influenced his in-court identification.  (Id.)  Respondent asserts that the

- 11 -

state court's decision was a reasonable application of United States Supreme Court precedent and involves a reasonable determination of the facts in light of the evidence. (Doc. #17, pp. 15-19.)

An eyewitness identification may constitute a due process violation if the identification procedures were "unnecessarily suggestive and conducive to irreparable mistaken identification." Stovall, 388 U.S. at 302; see also Manson v. Brathwaite, 432 U.S. 98, 104, (1977); Neil v. Biggers, 409 U.S. 188, 196 (1972). The fact that the identification procedure used was suggestive, alone, does not violate due process. See Neil, 409 U.S. at 198-99. Rather, the "central question" is "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199. The Supreme Court has identified several factors to consider in evaluating "the likelihood of misidentification," including: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Id. at 199-200.

The trial court held a hearing on Petitioner's motion to suppress the in-court identification of the Petitioner by a State's

witness.  (Ex. 1.)  A review of the record reveals the trial court denied the motion and found the witness' identification was based on his independent recollection of the person who had committed the robbery and not the result of the improper show-up.  (Id. at pp. 74-76.)  The trial court found the State had produced clear and convincing evidence that under the totality of the circumstances the witness' identification was not influenced by seeing the Petitioner in the courtroom the previous Friday and was based on his independent memory of his observations on the night of the offense.  (Id.)  The trial court based its decision on the detailed description the witness gave on the night of the offense, the sufficient opportunity to see the perpetrator on the night of the offense, the witness' difficulties in making an identification from a photograph, and most importantly, because the witness convinced the trial court that he could set aside his observation of the Petitioner from the improper show-up and make an independent identification based on his memory of the Petitioner from the night of the offense.  (Id.)

The Court has reviewed the record and concludes that it was not objectively unreasonable for the state court to find that the witness' in-court identification of the Petitioner was reliable. Although the trial court did not mention the case by name, the factors the trial court considered were those set forth in Neil v. Biggers.  The witness' in-court identification was properly

admitted after the trial court heard testimony from the witness about the basis of his identification and determined the identification was not influenced by the prior improper identification.  The testimony from the witness was sufficient to establish his identification of the Petitioner as the person who threatened him with a knife during the robbery was based on his independent recollection of the Petitioner. In pertinent part, the trial court found the witness had an independent recollection based on what he witnessed during the robbery, which was separate from the improper identification.  The witness testified during the hearing that he never lost sight of the robber during the altercation, stood a foot away from the robber when he confronted him for two or three minutes, and approximately ten feet away when the robber was loading the television into the waiting car. (Ex 1, pp. 16, 20.)  Furthermore, the witness gave a physical description of the robber to the police at the scene of the robbery.  Thus, the record from the hearing supports the trial court's finding that the witness had a good opportunity to view the robber and identify Petitioner as the robber.  The trial court's findings on the Biggers factors are entitled to presumption of correctness, and Petitioner has not shown the findings were clearly erroneous.

A thorough review of the law and the record reveals that the state court's decision was not contrary to clearly established

federal law, was not an unreasonable application thereof, and was not based on an unreasonable determination of the facts. Accordingly, Petitioner is not entitled to relief on Ground One.

**B.   Ground Two: Whether Petitioner's trial counsel was ineffective for failing to object to the trial judge asking clarifying questions during the hearing on the motion to suppress.**

In ground two, Petitioner alleges he was denied effective assistance of counsel because trial counsel did not object to the trial court's questioning of the witness at the suppression hearing. Specifically, Petitioner takes issue with the following exchange between the trial court and the witness which occurred during his re-cross examination at the suppression hearing:

> THE COURT: Let me ask you this question though. If you put that out of your mind, if you hadn't seen him last Friday, if you hadn't come to court last Friday being here now, could you identify the person who pulled the knife on you?
>
> THE WITNESS: Yes.
>
> THE COURT: How could you do that?
>
> THE WITNESS: Because I could look at the individual and see him.
>
> THE COURT: As you saw him on that day?
>
> THE WITNESS: On that day.
>
> THE COURT: So you're telling the court you can make that identification independently of whatever may have happened last Friday?
>
> THE WITNESS: Yes.
>
> THE COURT: No doubt in your mind?

THE WITNESS: No doubt.

THE COURT: Absolutely.

THE WITNESS: Absolutely.

(Ex. 1, p. 47.)   Petitioner asserts that until the state court questioned the witness, the testimony did not constitutes clear and convincing evidence that the witness had an independent recollection of his assailant.   (Doc. #2, p. 18.)   Petitioner asserts that without the witness' responses to the court's questions, his motion to suppress would have been granted. (Id.) Petitioner raised this claim in his Rule 3.850 motion.   (Ex. 10.)

In response, Respondent asserts Petitioner has failed to show that trial counsel was ineffective for failing to object. Respondent further argues that the state court's decision was a reasonable application of Strickland.   In denying relief, the post-conviction court held as follows:

> Defendant alleges that his trial counsel was ineffective for failing to object to the trial judge asking clarifying questions during the hearing on the motion to suppress.   To prevail on a claim of this nature a defendant would have to demonstrate that the trial judge "departed from neutrality or had expressed bias or prejudice." Perry v. State, 776 So. 2d 1102, 1103 (Fla. 5th DCA 2001).   The record reflects that the questions asked by the trial judge in this case were almost identical to the questions raised by the State. (attached hereto is an abstract copy of State's Exhibit B, Trial Transcript, pgs. 41-47).   Since the questioning identified in Defendant's motion was tailored to clarify the issue that was before the Court at that time, an objection by counsel would have been meritless.   Counsel cannot be deemed ineffective for failing to make a meritless objection, and therefore, this claim is

denied. <u>Hitchcock v. State</u>, 991 So. 2d 337, 361 (Fla.
2008); <u>Melendez v. State</u>, 613 So. 2d 1366, 1369 (Fla.
1992).

(Ex. 10 at p. 2.)

Florida courts have held that "[i]t is within the court's
prerogative to question witnesses [w]hen required by the interests
of justice or to clarify an issue." <u>Poe v. State</u>, 746 So. 2d
1211, 1213-14 (Fla. 5th DCA 1999) (internal quotation and citation
omitted).  However, a trial court abuses its discretion if "it
appears that the judge departs from neutrality or expresses bias
or prejudice in his comments in the presence of the jury." <u>Id.</u>
(quotation omitted).

Here, the trial judge briefly questioned the witness
regarding whether his in-court identification was based on his
independent recollection of what he witnessed during the robbery
or was influenced by the improper show-up identification.
Petitioner has not shown deficient performance by counsel or
prejudice.  Although counsel did not object, there was no
indication the trial court expressed bias or prejudice thus,
counsel cannot be deemed ineffective for failing to make a
meritless objection.  The trial court's questions elicited
relevant information and clarified the witnesses' testimony as
permitted by Florida law.  There was no jury present during the
suppression hearing and the trial court did not depart from
neutrality by taking on the role of the prosecutor nor did the

judge express any bias when questioning this witness.   See Poe, 746 So. 3d at 1215 (noting that the trial court engaged in "intense and sustained questioning" which "overshadowed the court's stated purpose of uncovering the truth" and instead took on the "role of co-prosecutor").   Therefore, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, Strickland.   Accordingly, ground two is denied pursuant to § 2254(d).

**C.   Ground Three: Whether trial counsel was ineffective for falling to object to the introduction of testimony that violated Bruton v United States, 391 U.S. 123 (1968).**

In ground three, Petitioner alleges he was denied effective assistance of counsel because trial counsel did not object to testimony that allegedly violated Bruton v United States, 391 U.S. 123 (1968).   Petitioner asserts that after his co-defendant, Justin Henderson was arrested, he informed police that he was willing to point out the house where the two other suspects lived. Corporal Borchers testified regarding the statements that Henderson made.   Petitioner argues the co-defendant furnished the police with evidence of the Petitioner's guilt and as such, was inadmissible hearsay under Bruton.   Petitioner argues that counsel had a duty to object to the state's improper introduction of the co-defendant's statements.

Respondent asserts that the co-defendant's statement do not violate Bruton and incriminate Petitioner.   Respondent further

asserts the state decision is a reasonable application of Strickland. In denying relief, the post-conviction court held, in relevant part:

> Defendant argues that his counsel was ineffective for failing to object to certain prejudicial statements made by a co-defendant which were admitted during trial. The first statements were made during direct examination by the State, and the second occurrence, on cross examination by defense counsel. (See State's Exhibit B, Trial Transcript, pgs. 296, 323). The statements identified in Defendant's motion are not excludable because they do not incriminate the Defendant. A statement is only excludable pursuant to Bruton v. United States, 391 U.S. 123 (1968), if it is incriminating. Victorino v. State, 23 So. 3d 87, 98 (Fla. 2009). The officer testified that at the time the co-defendant made the statement, the co-defendant had been asked to identify the location of his residence. (See previously attached transcript a, pgs. 296). Therefore, the statement i[s] not incriminating to the Defendant in the present case, and not excluded under Bruton. Counsel cannot be deemed ineffective for failing to make a meritless objection, and therefore, this claim is denied. Hitchcock v. State, 991 So. 2d 337, 361 (Fla. 2008); Melendez v. State, 612 So. 2d 1366, 1369 (Fla. 1992).

(Resp. Ex. 10 at p. 2.)

A Bruton error occurs "when a facially incriminating confession of a non-testifying co-defendant is admitted during their joint trial." United States v. Persaud, 605 Fed. App'x 791, 798 (11th Cir. 2015). "[O]nly those statements by a non-testifying co-defendant that directly inculpate or 'powerfully incriminate' the defendant give rise to a constitutional violation." United States v. Samson, 540 Fed. App'x 927, 932 (11th Cir. 2013) (unpublished) (citing United States v. Arias, 984

F.2d 1139, 1142 (11th Cir. 1993)).  "'A statement is powerfully incriminating if it 'expressly implicates' the defendant.' " Id. (quoting United States v. Mendoza-Cecelia, 963 F.2d 1467, 1481 (11th Cir. 1992)).  "No Bruton problem exists, however, when the statement is 'not incriminating on its face, and became so only when linked with evidence later introduced at trial.'" Id. (quoting Richardson v. Marsh, 481 U.S. 200, 208 (1987)).  However, even a blatant Bruton error is harmless when evidence produced at trial other than that derived from the Bruton error indicates the defendant's full participation in the crime.  See United States v. Dulcio, 441 F.3d 1269, 1276 (11th Cir. 2006) (citing United States v. Gonzalez, 183 F.3d 1315 (11th Cir. 1999)).  See also, Harrington v. California, 395 U.S. 250 (1969).

Upon a thorough review of the record and the applicable law, the Court finds the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).  As an initial matter, the record shows that trial counsel did object to the questioning as hearsay. (Ex. 6, pp. 88-89.)  In addition, the co-defendant's statement neither directly implicated nor "powerfully incriminated" Petitioner.  The record shows that the co-defendant offered to show police where

the Petitioner lived.   While the statement may have implicated
Petitioner after it was linked with the other evidence, it is
insufficient to support a Bruton violation.   Further, Petitioner
has failed to show a reasonable probability that counsel raising
the objection would have led to a different result.   Therefore,
the state court's denial of this claim was neither contrary to,
nor an unreasonable application of, Strickland.   Accordingly,
ground three is denied pursuant to § 2254(d).

   **ORDERED:**

   1.   The Florida Attorney General is **DISMISSED** as a named
Respondent.

   2.   The Petition (Doc. #1) is **DENIED**.

   3.   The Clerk of Court shall terminate any pending motions,
enter judgment accordingly, and close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

   **IT IS FURTHER ORDERED** that Petitioner is not entitled to a
certificate of appealability on either petition.   A prisoner
seeking to appeal a district court's final order denying his
petition for writ of habeas corpus has no absolute entitlement to
appeal but must obtain a certificate of appealability ("COA").   28
U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 184 (2009).
"A [COA] may issue . . . only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) or, that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

DONE and ORDERED in Fort Myers, Florida on this   22nd   day of June, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: ftmp-2
Copies: All Parties of Record